## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PACIFIC INDEMNITY COMPANY,
as subrogee of Stephen E. Binder
and Kris A. Estes

               Plaintiff,

v.

SUNLIGHTEN, INC.
formerly known as Sunlight Saunas, Inc.

    and

THOUGHTFORMS CORPORATION

    and

MR. MIKE & B'S ENTERPRISES, LLC
also known as Mr. Handyman of
Central Middlesex

    and

DRISCOLL ELECTRIC CO., INC.

    and

DAVEYO, INC.
trading as Safety Signal Security Systems

              Defendants.

CIVIL ACTION NO. 11:11-cv-11486 DJC

**JURY TRIAL DEMANDED**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS THOUGHTFORMS CORPORATION'S AND DRISCOLL ELECTRIC CO., INC.'S MOTIONS FOR SUMMARY JUDGMENT

1.    **Procedural History**

This is an action for damage to the real and personal property of plaintiff's insureds,

Stephen E. Binder and Kris A. Estes, sustained during a fire at their home in Lincoln,

Massachusetts on or about September 17, 2008.  Plaintiff insured the Binder/Estes family for

losses to real and personal property at the home and compensated the Binder/Estes family for damage to real and personal property in the amount of $5,694,354.96 following the fire.

The complaint in this action was filed on August 22, 2011 (DE 1).   Defendant Thoughtforms Corporation ("Thoughtforms") filed a motion to dismiss (DE 10), joined by defendant Driscoll Electric Co., Inc. (DE 21), seeking to enforce a waiver of subrogation in a construction contract not attached to any pleading in the case and about which there were genuine issues of material fact that had not yet been the subject of discovery.   Following oral argument, the Court denied the defendant's motion to dismiss on May 11, 2012.   DE 56-1 at Exhibit "D."

In so ruling, the Court specifically noted that "Moreover, there may be a question of intent of the parties with respect to two key provisions in the agreement; the waiver of subrogation provision (Article 22.6) and a second provision in Addendum A to that agreement stating that "Thoughtforms shall be responsible for all damages and liability caused by its negligence in the construction of this project."   Id.

After additional discovery as permitted by the Court, limited to the issues raised in the motions to dismiss, the moving defendants have now renewed their motions in the form of motions for summary judgment.   For the reasons stated below, these renewed motions should be denied, just as the motions to dismiss were denied, because the record simply does not support the relief requested and there are genuine issues of material fact that can only be determined by a jury.

## 2.   **Standard of Review**

Summary judgment is appropriate when the pleadings and the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56 (a).   The moving party bears the initial burden of establishing that there are no genuine issues of material fact by identifying aspects of the record that demonstrate the

absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its burden, the burden shifts to the non-moving party to produce

specific facts establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986). If a rational trier of fact could find for the non-moving

party, then summary judgment is not appropriate. Id. at 587. All facts, as well as all justifiable

inferences to be drawn from those facts, must be viewed in the light most favorable to the non-

moving party. Id. at 587.


> **3.     There Is A Genuine Issue Of Material Fact For Trial Regarding Whether
> The Contract To Construct The "Accessory Structure" Adjacent To The Binder Home
> Applies To Unrelated Work Performed By Moving Defendants In The Home**

The complaint alleges that Thoughtforms is liable to plaintiff, for, inter alia, constructing

and installing certain sauna-related structures in the home including an enclosure in the home in

which a Sunburst III sauna was installed. DE 1 at 5, Complaint, para. 19, 20. The sauna was

later (after the construction was completed) alleged to have malfunctioned, causing the fire. Id.

at 5, Complaint, para. 23. It is alleged that Thoughtforms is liable for its negligence in:

> a)     failing to exercise reasonable care in the design, construction,
>        installation, maintenance, and/or repair of the sauna enclosure in
>        the subject premises, the power to the sauna and the associated
>        controls, safety switches, and component parts of the sauna;
>
> b)     failing to comply with all applicable codes in the design,
>        construction, installation, maintenance, and/or repair of the sauna
>        enclosure in the subject premises, the power to the sauna and the
>        associated controls, safety switches, and component parts of the
>        sauna;
>
> c)     failing to comply with applicable industry standards in the design,
>        construction, installation, maintenance, and/or repair of the sauna
>        enclosure in the subject premises, the power to the sauna and the
>        associated controls, safety switches, and component parts of the
>        sauna;
>
> d)     failing to properly and adequately supervise and direct its agents,
>        servants, employees and/or subcontractors in the design,
>        construction, installation, maintenance, and/or repair of the sauna

enclosure in the subject premises, the power to the sauna and the associated controls, safety switches, and component parts of the sauna; ;

e)   negligently hiring, retaining and/or subcontracting with unqualified individuals and/or entities relative to the design, construction, installation, maintenance, and/or repair of the sauna enclosure in the subject premises, the power to the sauna and the associated controls, safety switches, and component parts of the sauna;

f)   failing to inspect the subject premises for fire hazards;

g)   failing to inspect the work performed at the subject premises;

h)   failing to warn plaintiff's insureds of the dangerous conditions that it knew, or should have known, existed at the subject premises;

i)   causing or allowing the subject fire to occur;

j)   failing to hire competent employees and/or subcontractors;

k)   representing to the that the design, construction, installation, maintenance, and/or repair of the sauna enclosure in the subject premises, the power to the sauna and the associated controls, safety switches, and component parts of the sauna;

l)   failing to take all necessary and reasonable precautions and actions to minimize the potential risk of damage to plaintiff's insureds' property; and such other and further acts that may be discovered during the pendency of this matter.

DE 1 at 10, Complaint, para. 41. Thoughtforms is also alleged to be liable for breach of warranty in connection with its work. DE 1 at 12, Complaint, paras. 44-48. It is further alleged that Thoughtforms' wrongful conduct was a proximate cause of the damages sustained by plaintiff's insureds. DE 1 at 11, Complaint, para. 42.[1]

These allegations, if proven and accepted by a fact-finder, are sufficient to establish liability on the part of Thoughtforms and Driscoll. In its order dated May 11, 2012, the Court ruled that the plaintiff's allegations were adequate to withstand a motion to dismiss the claims of negligence and breach of warranties.

---

[1] Similar allegations were made against Driscoll. DE 56-1 at 11-14.

Thoughtforms and Driscoll initially contended in their motions to dismiss that a purported waiver of subrogation in the construction contract between Thoughtforms and plaintiff's insureds bars this instant action.  DE 11 at 5-12.  The Court, in its May 11, 2012 order, noted that the complete construction agreement was not before the Court, and that the record was otherwise incomplete, compelling the motions to dismiss to be denied.  However, even after additional discovery on this issue, and despite the defendants' best efforts to cast the record in the light most favorable to themselves rather than the non-moving party, as required, the record still compels a finding that there is a genuine issue of material fact for trial regarding whether the contract to construct the "accessory structure" applied to the work performed by the moving defendants in the Binder's primary residence.

First, the contract proffered by Thoughtforms is, on its face, inapplicable to the work alleged to relate to the fire.  The contract by its express terms identifies that it covers the work to construct the "Estes/Binder Residence Accessory Structure."  DE 56-1 at 18.  Discovery has confirmed, and moving defendants appear to agree, that the work alleged to have caused the fire was work performed by the moving defendants in the homeowner's main residence, not the "accessory structure."   DE 51 at 2, DE 52 at 2.  Indeed, it appears to be uncontested that the contract for the accessory structure makes no reference whatsoever to any work to be performed in the main residence itself, as opposed to the "accessory structure."[2]  This fact alone, of course, strongly supports a finding that the contract for construction of the "accessory structure" is unrelated to work performed by the defendants in the main residence, and certainly a jury could so find.

The defendants have attached to their motions a litany of cost, scheduling and estimate documents relating to work in the main house that they claim is "intermingled" with work on the

---

[2] The defendants refer to the "accessory structure" as the "pool house."  See, e.g. DE 51 at 5. However, the homeowner, Mr. Binder, referred to this additional structure at his deposition as the "gym" structure.  DE 56-1 at 37.

"accessory structure," including (described in as self-serving a manner as possible): construction schedules, cost summaries, change order logs, owner's manuals, meeting notes, and punch lists. See e.g. DE 51 at 6-7. Most significantly, however, the defendants have not provided to the Court any document purporting to be a written amendment to the contract for the "accessory structure" that would include and cover the work to be performed in the main residence, including the sauna, wiring to the sauna, and sauna enclosure, that is alleged to have caused or contributed to the fire. Moreover, even after extensive oral examination of the homeowner, Mr. Binder, the best that the defendants can do is concede that there was never any written amendment to the written contract for the "accessory structure" that covered the work in the main house, and that the homeowner had, essentially, given no thought one way or another as to whether the work in the main house was covered by the written contract for the "accessory structure." DE 51 at 15-16.

The moving defendants completely ignore the possibility, which would be fatal to their motions but entirely consistent with the evidence of record, that there was no written contract whatsoever covering the work performed in the main residence, but there was, instead, an oral agreement or understanding that the work in the main residence would be performed under the same rates as the written contract for the accessory structure, and was to be performed in a good and workmanlike manner, but was to be separate and apart from (and not covered by) the written contract for the "accessory structure." Support for this is found in the fact that the homeowner insisted that the billings for work on the main structure be kept separate from billings related to the "accessory structure," as even the defendants concede. Id. See also testimony of Mr. Binder at DE 56-1 at 38-39.

Further support for this conclusion is found in the homeowner's deposition testimony where he recounted that there was no understanding, one way or another, that the written contract for the "accessory structure" would govern work performed on the main house but that

it <u>was</u> understood that work on the main house would be performed at a "similar fee structure and workmanship." DE 56-1 at 39. This testimony supports that the homeowner viewed the work at the main structure to have been performed under a separate oral agreement governing that work.

Additional support for this conclusion is also found in the fact that, as originally drafted by defendant Thoughtforms, the contract for the construction of the "accessory structure" was entitled the contract for "Estes/Binder Residence." DE 56-1 at 43. At the homeowner's insistence, the title of the contract was changed to be more specific, to cover the "accessory structure" only. <u>Id.</u>

Oral contracts for construction are fully enforceable where the parties intend to be bound and there is agreement as to the basic terms of the undertaking. <u>Novel Iron Works, Inc. v. Wexler Construction Company, Inc.</u>, 26 Mass. App. 401,408, 528 N.E.2d 142 (1988).[3]

All of this evidence of record, when read in the light most favorable to the plaintiff, as required, supports the finding that a genuine issue of material fact remains for trial on the issue of whether the written waiver of subrogation in the contract to build the "accessory structure" covered the completely separate work being performed by the defendants in the homeowner's main residence. Under the facts of record, a jury would be entitled to find that there was an oral agreement, not including any of the written waivers or limitations upon which the defendants rely, that governed the work performed by the defendants in the main residence.

_____

[3] Defendants ignore the possibility, consistent with the evidence of record, that a jury could find that there was no meeting of the minds at all on the terms of the work to be conducted in the main residence beyond the price to be charged for the work. Keeping in mind that defendant Thoughtforms is a professional contracting company that initially prepared and proffered the AIA agreement at issue, DE 56-1 at 40, it could easily have prepared and presented to the homeowner for signature a written amendment to the contract covering the work in the main residence if that was the intent of the parties. Its failure to do so is evidence that the work to be performed in the main residence was <u>not</u> intended to be covered by the written contract governing construction of the "accessory structure."

4.      **The Addendum To The Written Contract Preserved The Plaintiff's Rights To Pursue Claims Against The Defendants**

Even if the written contract for the construction of the "accessory structure" applies to the work performed by the defendants in the main structure, the addendum to the contract upon which the defendants rely provides specifically that "Thoughtforms Corporation shall be responsible for all damages and liability caused by its negligence in the construction of this project." DE 56-1 at 31. This express assumption of liability for negligence in a manuscript addendum to the contract is strong evidence that the intent of the parties was that Thoughtforms and Driscoll, its sub-contractor, would remain liable for their negligence notwithstanding the waiver of subrogation upon which the defendants rely. Indeed, that is exactly what the language states.

Under Massachusetts law, contract interpretation is generally a question of law. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47, 589 N.E.2d 1235 (1992). In interpreting a contract, the court must give effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible. Shea v. Bay State Gas Co., 383 Mass. 218, 224-25, 418 N.E.2d 597 (1981) (citing Massachusetts Turnpike Authority v. Perini Corp., 349 Mass. 448, 452, 208 N.E.2d 807 (1965)). The Supreme Judicial Court of Massachusetts has explained that '[j]ustice, common sense and the probable intention the parties are guides to construction of a written instrument.' Shane v. Winter Hill Fed. Savings & Loan Ass'n, 397 Mass. 479, 483, 492 N.E.2d 92, 94 (1986) (citations omitted). 'An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.' Starr v. Fordham, 420 Mass. 178, 190, 648 N.E.2d 1261, 1270 (1995) (quoting Restatement (Second) of Contracts § 203(a) (1981)). As set forth

above, the addendum to the contract states "Thoughtforms Corporation shall be responsible for all damages and liability caused by its negligence in the construction of this project."

To the extent that the contract is ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779, 761 N.E.2d 946, 951 (2002).  Contract language is ambiguous 'if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.' Citation Ins. Co. v. Gomez, 426 Mass. 379, 688 N.E.2d 951, 953 (1998) (citations omitted).  On a motion for summary judgment, where all inferences must be drawn in favor of the non-moving party, the defendants' motion for summary judgment should be denied, based on the language in the contract addendum.

The defendants contend that this addendum language was only intended to preserve claims by the homeowner against the defendants for damages not covered by property insurance. DE 51 at 4.  Of course, that is not what the language of the addendum says, and Thoughforms could certainly have said this in the addendum if that is what the parties had agreed.  There is no such limiting language in the addendum, which by its express terms covers "all damages and liability" caused by the contractors' negligence.  Defendants argue that the addendum can and should be read consistently with the main contract by limiting the addendum to permit claims not covered by property insurance.  However, no such language would have been necessary in an addendum to preserve such rights in the first place.  It is more consistent to read the addendum as preserving all rights to pursue the defendants for negligence regardless of whether the claims were covered by property insurance. [4]

---

[4] The homeowner did not testify to the contrary at his deposition.  Mr. Binder, when questioned about the addendum, testified that he could not recall any contract negotiations regarding the language at issue, DE 56-1 at 41, and that he would not have intended the addendum to "limit" the waiver of subrogation provisions in the main contract. Id. at 42.  In fact, the addendum broadens or at least preserves the liability of the defendants, not "limits" it, and nothing in Mr. Binder's testimony conflicts with that reading of the addendum.

Finally, the defendants rely on the case of <u>Am. Zurich Ins. Co. v. Barker Roofing, L.P.</u>, 2012 WL 5231858 (Tex. App. Oct. 23, 2012), but this reliance is misplaced. In the first place, <u>Barker Roofing</u> turned on the construction of Texas law not applicable here. As the defendants note, and plaintiff agrees, Massachusetts substantive law governs this dispute. Secondly, in <u>Barker Roofing</u>, the issue was whether a sub-contractor's subcontract with the general contractor that contained indemnity language in favor of the owner could create liability on the part of the sub-contractor to the owner greater than, and broader than, the liability owed to the owner under the general contractor's prime construction contract. In that case, unlike the present case, the owner's contract with the general contractor contained an express waiver of subrogation and <u>did not</u> contain language like that present here preserving rights to make negligence claims against the general contractor. Indeed, the owner in <u>Barker Roofing</u> did not even sue the general contractor, presumably because of the express waiver of subrogation; the owner simply sued the sub-contractor, Barker Roofing. Under those circumstances, the Texas court properly held that the sub-contract, which incorporated by reference the terms of the prime contract, could not create rights to sue broader than those that existed in the prime contract. Those facts don't pertain here, where the prime contract specifically preserved the owner's rights to sue the general contractor, Thoughtforms, for negligence, in the addendum to the contract.

### 5.   The Waiver of Subrogation, Even if Applicable, Does Not Waive Claims for Damage to Personal Property

Moving defendants contend that Section 22.6 of the construction project provided that the "Owner and Contractor waive all rights against each other" for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to Article 22 or other property insurance applicable to the Work." Under the contract, "Work" includes construction that is either "completed or partially completed." Section 12.4. Thus, defendants argue, to the extent that the homeowners obtained insurance from plaintiff that insured against the perils of

fire on the completed "Work," the homeowners (and thus the plaintiff)[5] waived all rights against the defendants for damages caused by fire to the extent covered by plaintiff's property insurance. DE 11 at 5.

The error in Thoughtforms' and Driscoll's analysis is that the "Work" is defined in the contract as the "completed or partially completed" construction.  Property, whether real or personal, that does not fall within the definition of the "Work," is not included within any of the waiver language upon which Thoughtforms and Driscoll rely.  Thus, the waiver of subrogation would not extend to damage to personal property of plaintiff's insureds or to "non-Work" real property resulting from the fire.

The complaint filed in the matter (DE 1) includes claims for both real and personal property resulting from the fire.  See DE 1 at 5, Complaint, para. 23, which states that  "on September 17, 2008, a fire originated in the sauna in the subject property causing substantial damage to the real and personal property located therein (hereinafter "the fire") causing extensive damage to plaintiff's insureds' property."  Additionally, the complaint alleges in para. 24, that "as a direct and proximate result of the fire, plaintiff's insureds  sustained severe and extensive damage and destruction to the real and personal property in an amount in excess of $5,694,354.96."

Thus, even if defendants were able to establish at trial that the waiver of subrogation in the construction contract applies to this case, then the motions must still be denied, in part, as the waiver of subrogation would only apply to the "Work" and not to any non-"Work" property damaged as a result of the fire.  The result here may turn on the finder of fact's determination of whether the fire damage in this case was or was not covered by the waiver of subrogation in the contract to construct the "accessory structure."  If the finder of fact determines that the waiver of

---

[5] Plaintiff does not contest that it is bound by whatever contractual limitations, if any, were agreed to by the homeowner.  Plaintiff "stands in the shoes" of the homeowner for the purposes of the arguments being made by the defendants.

subrogation does not apply because the written contract does not apply to the work performed in the main residence, then, of course, the defendants' argument must fail.

Finally, the defendants cite Haemonics Corp. v. Brophy & Phillips Co., Inc., 23 Mass. App. 254 (1986), and several out of state cases, for the proposition that insurance obtained or in place that covers damage to the "Work" as defined in an AIA agreement, that also covers damage to "non-Work" property, will be subject to the protections of a waiver of subrogation in a construction contract.  There is a missing element here, however, not addressed by the defendants.  The Chubb/Pacific Indemnity policies which were in place during the construction of the "accessory structure" and at the time of the fire were homeowners policies issued to the Binders, not builders risk policies, and the insurable interests of the defendants in the "Work" were not insured, covered or protected by these policies in the event of a fire.  See DE 56-1 at Exhibit "F" (naming only the Binders as insureds).

Thus, the Chubb/Pacific Indemnity homeowner's policies purchased by the Binders would not have protected the defendants' insurable interests in the "Work" described in the "accessory structure" contract and are therefore different than the policies described in Haemonics and the other cases relied upon by defendants. It was found or assumed by the court in Haemonics that the policy in place covering "non-Work" damage was also the policy chosen by the owner to cover the "Work."  Haemonics, 23 Mass. App. at 257.   In this case, however, the Chubb/Pacific Indemnity policies purchased by the Binders could not have qualified as the policies required under Section 22.3 of the AIA agreement covering construction of the "accessory structure" because by the terms of Section 22.3, the policy covering the "Work" was required to include the "interests of the …Contractor, Subcontractors and Sub-subcontractors in the Work…" DE 56-1 at 28.

Thus, the Chubb/Pacific Indemnity insurance policies cannot be the basis of the waiver of subrogation provisions being relied upon by the defendants.   All "non-Work" damage sustained

by the homeowners is thus fully recoverable here, notwithstanding the issuance of the

Chubb/Pacific Indemnity insurance policies. [6]

### 6.   **Conclusion**

For all of the reasons stated above, the motions for summary judgment of defendants

Thoughtforms and Driscoll should be denied.

/s Douglas B. Fox (PHV)
Douglas B. Fox, Esquire
Steven Gerber, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Ph: (215) 665-2000
Fax: (215) 665-2013
E-mail: dfox@cozen.com; sgerber@cozen.com


s/Patrick J. Loftus
Patrick J. Loftus, III, Esquire (BBO #303310)
LAW OFFICES OF PATRICK J. LOFTUS, III
9 Park Street, Suite 500
Boston, MA  02108
Ph: (617) 723-7770
Fax: (617) 248-9752
E-mail: soxdctr@aol.com


### **CERTIFICATE OF SERVICE**

I, Douglas B. Fox, hereby certify that, on this 4th day of January, 2013,

the foregoing document was filed through the ECF system, and the document will be sent

electronically to all counsel of record in the case.

s/ Douglas B. Fox (PHV)

---

[6] Indeed, this analysis applies equally to the defendants' primary argument that the waiver of subrogation clause applies to damage to the "Work" itself.